UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

THE REAL PROPERTY LOCATED AT
4527-4535 MICHIGAN AVENUE,
DETROIT, MICHIGAN

        Defendant.

_____/

Civil No.
Honorable
Magistrate Judge

## COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, United States of America, BARBARA L. McQUADE, United States Attorney for the Eastern District of Michigan, by and through T.N. ZIEDAS, Assistant United States Attorney, and for its Complaint for Forfeiture states as follows:

1.      This is a civil action to forfeit real property pursuant to 18 U.S.C. § 985 and 21 U.S.C. § 881(a)(7).

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

3.      Venue is proper pursuant to 28 U.S.C. §1395 because the defendant real property is located within this district.

4.      The defendant real property that is the subject of this action is located at 4527-4535 Michigan Avenue, Detroit, Wayne County, Michigan, together with all improvements, buildings, fixtures and appurtenances thereto (the "Defendant Real Property").  The Defendant Real Property is legally described as follows:

**S. Michigan Lot 9 Exc Michigan Ave as WD R H Halls Sub L2**
**P26 Plats, W C R 14/58 40.08 X 76**
**Parcel No. 14000688**

5.      There is a related criminal case, *U.S. v. Aref Nagi, et al,,* 06-20465 (E.D. Mich.),

assigned to Honorable Nancy G. Edmunds.

6.      The defendant real property is known as the "clubhouse," and is owned by the

Highwaymen Motorcycle Club, a/k/a Detroit Highwaymen Incorporated, a Michigan corporation

organized under the laws of the State of Michigan, and used by its members.

## BACKGROUND

Investigation by the Federal Bureau of Investigation ("FBI") into the illegal activities of

the Highwaymen Motorcycle Club, ("HMC"), revealed that:

7.      HMC is a regional organization with individual chapters located in cities in

Michigan, Kentucky, Tennessee, Florida, Alabama, Indiana, and elsewhere.   Michigan chapters

of the HMC were located in Detroit, Monroe, Lansing, Huron Township, and Ypsilanti.  The

original chapter, or Mother Chapter of the HMC is the Detroit Chapter, whose clubhouse is

housed in the defendant real property, located at 4527 Michigan Avenue.

8.      HMC is an "Outlaw Motorcycle Club," its members using and selling narcotics;

in possession of illegal firearms; committing acts involving murder, attempted murder, robbery,

extortion, and arson with the object of  maintaining club discipline, punishing HMC members

and associates, maintaining the authority, standing, and reputation of the HMC members and

associates, and maintaining the territory of the HMC.

9.      Each HMC Chapter has a President, Vice President, Treasurer, Sergeant at Arms

(enforcer), and general members.

2

10.     The HMC National President controls the activities of all HMC members.  The Detroit Chapter President was the National President's second in command.

11.     In addition to the HMC National President, there was an ex officio body known as the "Committee," whose members included Robert Burton, Aref Nagi, Michael Cicchetti, Joseph Whiting, and Leonard "Dad" Moore.  Members who had achieved "honorary" status for long time membership included Anthony Clark, Michael Cicchetti, Joseph Whiting, Gary Ball, Jr., and Dad Moore.  Dad Moore, known to the HMC as the "godfather" of the HMC, was recognized as holding the top position, and, though he held no club office he was, in fact, in charge of the HMC.

12.     HMC members were expected to abide by a written HMC Constitution, or code. Failure to do so resulted in fines, assaults, and/or expulsion from the organization.

13.     HMC members wore "colors" (leather vests or jackets with the HMC emblem on the back).  The colors displayed other symbols such as "MC" (motorcycle club), club rank, chapter, chapter location, and other symbols denoting status or accomplishment in the organization.

14.     HMC members were required to attend special events referred to as "runs." Failure to attend a run subjected the member to disciplinary action.

15.     HMC members were expected to follow orders from the National President, the Detroit Chapter President, or their own Chapter President.  These orders included the takeover of rival gangs, retaliation against rival gangs, orders to assault other gang members, and the use of intimidation and threats against witnesses.

16.     HMC members paid monthly dues to their Chapters, a percentage of which went

3

to the National Organization.  HMC members were subjected to taxes, or special assessments, for various club purposes.

17.     HMC members who generated a profit from illegal activities, such as trafficking in controlled substances or transporting stolen motorcycles, contributed a portion of those proceeds to their chapters in the form of dues and expenses; and, a bail and legal defense fund for members who had been arrested and for payment of fines and penalties.  Members also gave stolen property and controlled substances in lieu of back dues and for penalties.

18.     As a result of the investigation of the HMC, on or around December 2009, 91 members and/or associates of the HMC, including, but not limited to, Aref Nagi, Michael Cicchetti, Leonard "Dad" Moore, Gary Ball, Jr., Gerald Peters, Joseph Whiting, Anthony Clark, Robert Burton, and  Louis Fitzner, were indicted (see ¶5, above).  A jury verdict at the conclusion of the criminal trial of Defendants Nagi, Cicchetti, Ball, Moore, Whiting, and Clark held in 2010, found Nagi, Ball, and Cicchetti guilty of conspiracy to possess with intent to distribute, and distribution of, cocaine, and found Nagi and Ball guilty of the racketeering act of conspiracy to distribute a controlled substance.   Criminal proceedings against the remaining defendants, including narcotics-related charges, remain pending.

**FACTS SUPPORTING FORFEITURE**

19.     The defendant real property, together with all improvements, buildings, fixtures and appurtenances thereto, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7), because it was used, or intended to be used, to commit, or to facilitate the commission of drug trafficking offenses, in violation of Title 21 of the United States Code.  The evidence in support of these violations includes, but is not limited to the following:

4

## Facilitating Drug Activity at the Defendant Property

a. FBI investigation of the HMC, and evidence introduced at the criminal trial, establish that the Detroit clubhouse was the site of unlawful drug activity, including a longstanding pattern of sales and use of controlled substances.  Trial transcripts corroborate that:

b. Several trial witnesses testified that drugs such as cocaine, marijuana and Vicodin were commonly shared  amongst members at parties and club meetings at the clubhouse, and that sales of small "user amounts" of cocaine were commonplace inside the clubhouse. Nat Sanchez, who was a cocaine dealer and at one time the president of the Monroe Chapter of HMC, witnessed as many as 12 HMC members over a period of three to four hours sharing a quantity of cocaine in the clubhouse.

c. HMC members Robert Burton, Chris Miller, Gerald Peters, Nat Sanchez, and Phil McDonald testified to seeing cocaine and marijuana being dealt or distributed in the clubhouse countless times.  All of them testified that they never saw national president Joseph Whiting nor HMC "godfather" Dad Moore try to stop it.

d. Chris Miller witnessed HMC committee member Robert Burton distributing cocaine in the clubhouse, and he saw marijuana being distributed for cash in the clubhouse.

e. Robert Burton testified that he personally dealt cocaine inside the clubhouse, and neither Joseph Whiting nor Dad Moore ever told him to stop.  The most Dad Moore would say to drug distribution in the clubhouse would be to "take it in the back room."

f. One-time national president Gerald Peters said that when he attended meetings at the clubhouse there were drugs present, including cocaine, marijuana, and Vicodin.

g. Peters testified that most of the HMC drug dealers sold drugs in the clubhouse.  He testified specifically that he witnessed Gary Ball, Jr., Anthony Clark, and "Manny" dealing drugs in the clubhouse.  Peters said that he saw drugs in every HMC clubhouse.

h. Drug dealer Nat Sanchez attended Detroit Chapter meetings every Wednesday and Friday night, where he conducted his business, which was selling cocaine.  Sanchez testified that he sold cocaine in all the Michigan clubhouses, except Lansing. Before each clubhouse meeting he would divide up, weigh, and package his cocaine so it would be ready for sale.

i. Because of Dad Moore's reputation in the HMC as the godfather of the club, HMC

drug dealers such as Nat Sanchez and Robert Burton gave cocaine to Dad for his personal use for free.  Sanchez testified that when he was preparing his cocaine for distribution at meetings in the Detroit clubhouse, he always prepared an extra "Dad Pack" to give to Dad Moore to stay on his good side. Burton stated that he would provide Dad as much as 3.5 grams of cocaine at a time.  He said that he had distributed cocaine over a period of many years to Dad Moore in this way "too many times to count."  Dealers would give cocaine to Dad Moore in the back room of the clubhouse.  Sanchez also "shared" cocaine in a similar way with honoraries Michael Cicchetti and Joseph Whiting.  He saw his competitor, Gary Ball, Jr., share cocaine with Dad Moore and Joseph Whiting, as well.  Sanchez always saw Ball bring a "nice size" portion of cocaine, about one ounce, to the clubhouse.

j.      Phil McDonald, who was at one time president of the Downriver Chapter of the HMC, observed Dad Moore and Joseph Whiting using cocaine in the clubhouse, in the backroom, or in the rest room.

k.      Robert Burton observed other HMC members who sold drugs, including national president Anthony Clark, Michael Cicchetti, Joseph Whiting, and committee member Gary Ball, Jr., who had also been president of the Detroit Chapter and the East Side Chapter, distributing cocaine in the clubhouse to Dad Moore.

l.      Michael Cicchetti obtained a great deal of cocaine from Gerald Peters at the clubhouse, but never paid for it because he held honorary rank.

m.      On one occasion HMC member Chris Miller was ordered to pick up food from HMC member Aref Nagi's restaurant to bring back for a clubhouse party.  Nagi was a drug dealer and was convicted at trial of conspiracy to distribute controlled substances. Along with the food order Nagi gave Miller a bag containing several tens of thousand dollars in cash and told him to take it straight into the clubhouse when he got there and hand it directly to Gary Ball, Jr., and nobody else.  Miller testified that he looked inside the bag on the way and observed the money consisted of fifty and hundred dollar bills.  Miller delivered the bag containing the cash to Ball at the clubhouse as instructed.  HMC member Lou Fitzner testified that Nagi and Ball bought and sold cocaine to each other, and on one occasion used Fitzner's basement to break a kilo of cocaine down and "cut" it into three kilos.  Investigators believe the large amount of cash Nagi had Chris Miller deliver to Ball at the clubhouse was a drug-related payment.

## CLAIM FOR RELIEF

20.      Plaintiff realleges all allegations in paragraphs 1 through 19 above, and

subparagraphs a-m.

6

21.     The defendant real property, together with all improvements, buildings, fixtures and appurtenances thereto, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7) because it was used, or intended to be used, to commit, or to facilitate the commission of drug trafficking offenses, in violation of Title 21 of the United States Code.

## RELIEF

WHEREFORE, the United States of America respectfully requests that notice of the complaint for forfeiture of the defendant real property be posted on the defendant real property; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; the judgment be entered declaring the aforementioned defendant property condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

Dated:     October 18, 2010

T.N. ZIEDAS
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-9717
Peter.ziedas@usdoj.gov
(P-34653)

7

## **VERIFICATION**

I, Edward Brzezinski, am a Special Agent with the Federal Bureau of Investigation.  I

have read the foregoing Complaint for Forfeiture and assert that the facts contained therein are

true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on

information received from other law enforcement agents.

Edward Brzezinski
Special Agent, FBI

Dated: 10-/8- 2010